[No. D010081. Fourth Dist., Div. One. May 11, 1990.]

Conservatorship of the Person of DEANE KAYE SCHARLES.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
DEANE KAYE SCHARLES, Objector and Appellant.

[Opinion certified for partial publication.[1]]

---

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of part I.

248

## Counsel

Lynne G. McGinnis, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, and Janice L. Ingold, Deputy County Counsel, for Petitioner and Respondent.

## Opinion

HUFFMAN, J.—At jury trial on a petition to reestablish her conservatorship under the Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.),[2] Deane Kaye Scharles was found to be gravely disabled. The trial court reestablished her conservatorship and imposed specific disabilities. Scharles appeals, contending the evidence was insufficient to support

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

the finding of grave disability and the judgment should be overturned because neither of the two medical health professionals who recommended conservatorship nor her treating doctor was required to testify. We find both contentions unmeritorious and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The record shows Scharles, who has a history of mental illness and treatment dating back many years, had this conservatorship established in 1988 when she was 42 years old. The public conservator was appointed on her behalf and she was placed in a state hospital. The conservator's reestablishment petition was brought a year later under section 5361[3] and was supported by a declaration signed by two mental health professionals who worked at her current placement (Norwalk State Hospital), a physician (Dr. M. Trinh) and a psychologist (Dr. Castellano). They diagnosed her as having schizophrenia of a chronic, undifferentiated type, with a secondary diagnosis of mild mental retardation. She also had a history of alcohol and amphetamine abuse and several physical problems. The declaration stated Scharles had had destructive, self-destructive, and assaultive tendencies in the past year, and her prognosis was guarded because of her poor impulse control, low frustration tolerance, and acting out behavior. She took a variety of medications including Prolixin (an antipsychotic) and Ativan (for agitation). She was evaluated to be unable and unwilling to accept voluntary treatment for medical or psychiatric purposes.

Through her attorney, Scharles requested a jury trial on the petition for reestablishment, which commenced May 1, 1989. (§ 5350 subd. (d).) The conservator called one witness, Dr. Bernard F. Hansen, a psychiatrist with the County of San Diego forensic evaluation unit who performs 40 or 50 mental status examinations per year in conservatorship matters. Dr. Hansen reviewed a two-and one-half foot stack of Scharles's medical records in connection with examining her in preparation for the trial in February 1989. He testified knowledge of her history was important to help him determine whether her illness was chronic and long-lasting. He also saw her briefly in the week before the trial, had seen her several times over the years, and felt he knew her. He observed she seemed well dressed and well fed at their interviews, and was not agitated.

---

[3] Section 5361 provides the procedure for reestablishing an LPS conservatorship after its original one-year term expires. In pertinent part the section states: "The petition must include the opinion of two physicians or licensed psychologists . . . that the conservatee is still gravely disabled as a result of mental disorder . . . ." Section 5008 subd. (h)(1) defines "gravely disabled" as: "A condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter . . . ."

In February, Dr. Hansen interviewed Scharles for 45 or 50 minutes, going through her history and forming a diagnosis that her major illness is schizophrenia of a chronic, undifferentiated type, with some mild retardation. He noted she was on a variety of medications, including the antipsychotic drugs Prolixin, Decadion, antidepressants and antianxiety medications; he felt she understood why she needed them. Her agitation was usually controlled by the medications. However, he did not believe she would take these medications regularly if she were not in a structured setting, "because there are times she's pretty confused and does not know too much." In the past, it had not been successful to treat her on an outpatient basis.

At her examination, Scharles told Dr. Hansen she hears voices which sometimes seem to come from her head and at other times have an outside source. She also told him she did not feel she could manage to live on her own. Testifying with the aid of his written report, Dr. Hansen stated he believed Scharles was unable to provide for her necessities of food, clothing, and shelter because of her personality traits, behavior, occasional delusions which were still occurring, and occasional physical aggressiveness. He based his conclusion partly on the fact that Scharles had not been able to maintain herself in the outside world and had been unable to function successfully in structured situations like board and care facilities. Dr. Hansen noted that from January 1986 to March 1988, Scharles had had 18 different placements, including hospitals and board and care homes, to which she had trouble adjusting due to her tendency to be aggressive and assaultive. Dr. Hansen testified part of the reason for her problems in getting into confrontations with people may be that she is responding primarily to her hallucinations.

Shortly before the trial, Dr. Hansen called Scharles's treating physician, Dr. Barbara Trinn, at Norwalk State Hospital to ask how Scharles was getting along.[4] In the month before the trial, Scharles had had to be placed in seclusion and restraints three times, and had been placed on suicide watch twice because she had bruised herself by banging her head on the wall.

On cross-examination, Dr. Hansen stated that there are cases in which mentally ill persons are able to take their medications and function adequately in society. He felt the probability was high that Scharles would be unable to do so.

---

[4] At trial, Scharles's attorney said the treating doctor, Barbara Trinn, and the recommending doctor, M. Trinh, were the same person. The record is ambiguous on this point. Neither doctor testified at trial.

At the conclusion of Dr. Hansen's testimony, Scharles moved for dismissal of the petition to reestablish on the grounds there had been no waiver of the presence of either the doctors who recommended her conservatorship be reestablished or her treating physician, and that section 5365.1 and then-San Diego Superior Court rule 5.31 (see text at fns. 6 and 7, *post*) required either such a waiver or live testimony. The trial court heard argument about whether section 5365.1 applied at reestablishment proceedings or just original establishment petitions. It then denied the motion to dismiss, finding the purpose of section 5365.1 was to allow medical records to be admissible without testimony. Since a professional witness, Dr. Hansen, had testified, the court thought the conservator had made an adequate showing to proceed to verdict even without the presence of the treating physician.

Scharles then testified on her own behalf. She said she had schizophrenia, a mental disorder that made her feel afraid of people. She found her medication helped her, and she would continue to take it if she were taken off conservatorship. If Scharles were not under conservatorship, she would find a doctor to help her, and she would get an apartment and buy food and clothing with her $600 SSI (Social Security) funds. The last time she held a job was 24 years ago. She has a longtime friend in the San Diego area who is a chief in the Navy, who sent her money and called her on the telephone several times at the hospital; he wants her to come live with him. She thought he would help her if she had problems with Social Security. He had not visited her at the hospital because he did not have a car, and was not present at the trial.

Scharles said she only had to wear a helmet in the hospital one day because she had banged her head, although she had been in seclusion and restraints because she was very upset. The voices she heard told her to hurt herself, although she did not hear them when she took her medication regularly. However, she had no thoughts of committing suicide at the time of trial.

The jury returned a verdict finding Scharles was unable to provide for her basic personal needs and was gravely disabled. The court reestablished her conservatorship and imposed certain disabilities.[5] Scharles appeals.

---

[5] The reestablished conservatorship is scheduled to expire approximately one year from the date of entry of judgment, May 2, 1989, depending on when the formal orders were signed. (§§ 5361, 5362.) We need not consider the matter moot, however, because of the recurring nature of the problems presented and the possibility that they could otherwise evade review. (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 724-725 [229 Cal.Rptr. 875].)

## Discussion

Scharles makes two basic attacks upon the judgment. We discuss the sufficiency of the evidence in this record first and then turn to her statutory argument concerning the requirements of section 5365.1.

### I*

. . . . . . . . . . . . . . . . . . . . . . .

### II

■ Scharles contends the trial court erred when it denied her motion to dismiss the conservator's petition to reestablish over her objections that section 5365.1 waiver requirements[6] and former local rule 5.31 waiver procedures[7] had not been satisfied. She argues this alleged error justifies reversal of the judgment, since she did not make an express waiver of the presence of the doctors who recommended her conservatorship be continued or of her treating doctor's presence, and thus their in-court testimony was essential to reestablishment.[8] We disagree.

---

*See footnote, *ante,* page 247.

[6]Section 5365.1 provides as follows: "The conservatee or proposed conservatee may, upon advice of counsel, waive the presence at any hearing under this chapter of the physician or other professional person who recommended conservatorship pursuant to Section 5352 and of the physician providing evaluation or intensive treatment. In the event of such a waiver, such physician and professional persons shall not be required to be present at the hearing if it is stipulated that the recommendation and records of such physician or other professional person concerning the mental condition and treatment of the conservatee or proposed conservatee will be received in evidence."

Section 5352, in brief, allows a professional person who is in charge of an evaluating agency or a treatment facility to recommend to the proper authorities that a conservatorship be established for a person whom he or she believes is gravely disabled and unable to accept voluntary treatment.

[7]Former San Diego Superior Court rule 5.31 (now renumbered rule 2.31) provided in pertinent part: "(1) Except as to written notices required by statute or these rules, oral notice must be provided to affected parties or their attorney and expert witnesses (if appearance is required) for any of the following actions: (a) Waiver of the presence of the expert . . . . [¶] (2) The notice required by this rule may be given by any means, including telephone. The notice must be given not less than one working day before the matter will be submitted to the court . . . ."

All subsequent rule references are to this rule.

[8]See footnote 4, *ante,* on the confusion in the record about the identity of her treating doctor Trinn and the recommending doctor Trinh. This confusion is not fatal to our informed consideration of Scharles's statutory argument, since neither doctor testified.

There was also confusion at trial when the motion to dismiss was argued. Scharles's attorney appeared to concede Dr. Hansen qualified under section 5365.1 as either a recommending or an evaluating doctor: "I have no question with Dr. Hansen as—5365.1 requires both

The basic purpose of section 5365.1 is to provide a procedure allowing admission of written records and recommendations without a formal foundation being laid in court. If such a waiver of presence is made, medical records and recommendations are fully admissible "at any hearing under this chapter." (§ 5365.1.) Similarly, former rule 5.31 sets out a procedure for the giving of notice where it is required for particular purposes. We first note the usual reason for applicability of these provisions is not present here, because the record does not show any party sought to introduce such records into evidence. Therefore, the only possible basis for applicability of this section and rule would be if they served to create a required witness list for reestablishment procedures.

Our reading of section 5365.1 and former rule 5.31 is that they provide permissive procedures for the receipt of written evidence. They do not create mandatory requirements that dictate the manner in which the conservator must carry his or her burden of proving beyond a reasonable doubt that the person is gravely disabled. A failure to utilize the waiver procedure to facilitate admission of evidence does not create any affirmative rights to the presence at trial of a recommending or a treating doctor. Moreover, nothing in the section interferes with the receipt of otherwise admissible evidence, such as expert testimony (provided in Scharles's case by Dr. Hansen). (See *Conservatorship of Pollock* (1989) 208 Cal.App.3d 1406, 1411 [257 Cal.Rptr. 14].)

Scharles's conservator urges us to conclude section 5365.1 does not warrant reversal of this judgment based on the distinction between initial establishment proceedings and later reestablishment proceedings. We do not find this distinction persuasive here. ■ It is true that section 5365.1 internally references a section dealing with a medical professional's initiation of conservatorships (§ 5352) and also refers to the physician who provides evaluation or "intensive treatment," which normally occur at the first stages of LPS conservatorships. (§§ 5150, 5250.) Thus, in describing whose records are involved, the section describes the doctors who began the conservatorship process. However, section 5365.1 also refers to waiver by the "conservatee or proposed conservatee," and speaks of waiver of the physician's presence "at any hearing under this chapter." These statutory terms are broad enough to encompass both initial establishment hearings and reestablishment hearings. We impliedly recognized this fact in *Conservatorship of Pollock, supra,* 208 Cal.App.3d 1406, 1411, where we referred to section 5365.1 as pertaining to reestablishment hearings. Similarly, it is well

the person recommending the conservatorship and the physician providing the evaluation or intensive treatment, and Dr. Hansen is not a treating physician. So the county has only produced one witness required under the code section." For our purposes, we need only note Scharles still contends an insufficient waiver was made here.

established the identical burden of proof (beyond a reasonable doubt) must be satisfied at both stages of the process. (*Ibid.*) Therefore, we do not believe the reference to section 5352, etc., in section 5365.1 was intended to limit the waiver procedure described to initial establishments of conservatorships.

 Assuming, as we do, that section 5365.1 is fully applicable to reestablishment proceedings, it still does not mandate the conservator to make his or her showing in any particular way by calling any particular doctors. The trial court reached this same conclusion when it denied Scharles's motion to dismiss. The pertinent authority for determining the extent of the showing required to reestablish a conservatorship, and whether the presence of any particular doctor is essential, is the statutory scheme for reestablishment, chiefly sections 5361 and 5362.[9]

 As we noted in *Conservatorship of Pollock, supra,* 208 Cal.App.3d 1406, reestablishment can be accomplished ex parte on the proper medical declarations unless, as here, court hearing or jury trial is requested. (*Id.* at p. 1411.) An expert psychiatric witness may base his or her opinion as to the person's mental capacity on hearsay, including statements made by the person or third parties. (*Conservatorship of Torres* (1986) 180 Cal.App.3d 1159, 1163 [226 Cal.Rptr. 142].) At the trial or hearing, the conservator must prove continued grave disability beyond a reasonable doubt, and nothing prevents the conservatee from controverting that showing, e.g., by subpoenaing the recommending doctors or any other witness. (*Conservatorship of Delay* (1988) 199 Cal.App.3d 1031, 1036, fn. 5 [245 Cal.Rptr. 216].)

 Scharles could have challenged the case made by her conservator that reestablishment was warranted, but she did not do so except through her own testimony. Her conservator met the pleading requirements set forth in section 5361 (such as the doctors' declarations) and also met the notice requirements of section 5362. As we explained in *Conservatorship of Delay, supra,* 199 Cal.App.3d 1031, 1036, the requirements for *presenting* a petition for reestablishment (i.e., pleading and notice) must be distinguished from the requirements for *establishing* that reappointment of a conservator is necessary over any challenge presented by the conservatee. Section 5365.1 supplies a procedure for the admissibility of evidence at the proof stage of the proceeding. Its terms do not, however, provide the conservatee with any guaranteed right to the presence of her recommending or treating doctors at her hearing or trial. If Scharles had wished to call those professionals as her witnesses in an effort to contradict the conservator's showing at her trial,

---

[9] See footnote 3, *ante,* for the provisions of section 5361.

Section 5362 provides the procedure for notice of the expiration of the one-year conservatorship period and any reestablishment proceedings. It also provides for ex parte reestablishment of conservatorships unless a court hearing or jury trial is requested.

she was free to do so. (*Conservatorship of Delay, supra*, 199 Cal.App.3d at p. 1036.) She did not. The showing made by the conservator was adequate, and the terms of section 5365.1 and former rule 5.31 do not provide any basis for reversal of this judgment.

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 18, 1990.