[No. D003513. Fourth Dist., Div. One. Sept. 18, 1986.]

Conservatorship of the Person of CHARLES MOORE, JR.
SAN DIEGO DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
CHARLES MOORE, JR., Objector and Appellant.

**COUNSEL**

Sharron Voorhees, under appointment by the Court of Appeal, for Objector and Appellant.

Judith Di Gennaro, Gregory Marshall and Michele Sacks Lowenstein as Amici Curiae on behalf of Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Eugene P. Kenny, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**KREMER, P. J.**—The trial court, on its own motion, granted the reestablishment of Charles Moore, Jr.'s conservatorship. On appeal, Moore contends a conservatorship cannot constitutionally be reestablished without a formal hearing and that Welfare and Institutions Code[1] section 5362 cannot be authority for any lesser process. We find Moore's due process challenges lack merit and affirm the ex parte reestablishment order. However, we recognize Moore may be entitled to relief on writ of habeas corpus and accordingly decide this case without prejudice to Moore's claim to extraordinary relief.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 1984, a county mental health counselor petitioned the superior court to appoint a conservator for Moore under the conservatorship provisions of the Lanterman-Petris-Short Act. (§ 5350 et seq.) An evidentiary hearing was held with Moore present and represented by appointed counsel. The trial court found Moore, due to a mental disorder, to be gravely disabled and consequently appointed a public conservator to oversee, among other things, his treatment and placement. Additionally, the trial court determined Moore was capable of registering to vote and refusing consent for medical treatment unrelated to his mental disability. However, the court determined he could not have a driver's license, enter into contracts, or refuse treatment directly bearing on his grave disability. In accord with section 5361, Moore's conservatorship was set for a one-year term.

On January 25, 1985, the clerk of the superior court, under section 5362, notified Moore, his appointed attorney, Malvina Abbott, his conservator and the supervisor of the Carmelita Board and Care Home where Moore was residing that Moore's conservatorship would expire on March 12, 1985. In the language of section 5362, the notice also stated the conservator had to

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

petition the court to reestablish the conservatorship and "[s]ubject to request for a court hearing by jury trial the court may, on its own motion, accept or reject the conservator's petition." The notice continued: "If the conservator petitions to reestablish conservatorship the conservatee, the professional person in charge of the facility in which the conservatee resides, [and] the conservatee's attorney, . . . shall be notified. If any of them request it, there shall be a court hearing or a jury trial, whichever is requested, on the issue of whether the conservatee is still gravely disabled and in need of conservatorship. . . ."

Subsequently the public conservator did petition to reestablish Moore's conservatorship. Filed with the petition was the medical report of Drs. J. Bickford and E. Culbertson diagnosing Moore as a chronic paranoid schizophrenic, finding him still gravely disabled and recommending Moore's conservatorship be reestablished. Under the authority of Probate Code section 1824 and San Diego Superior Court rule 5.90, a copy of the petition and the notice of the filing of the petition were mailed to Moore, Abbott and the director of the Carmelita Board and Care Home. The notice of filing again informed the recipients any of them could request a hearing or jury trial regarding the reestablishment.

After receiving the reestablishment petition and following San Diego County Superior Court rule 5.91, Abbott filed in the court a sworn declaration stating: "On 3/8/85, I ascertained that [Moore] does not oppose the reestablishment of the Conservatorship of his Person. [¶] No request for a hearing is made at this time; . . ." After receiving this declaration and reviewing the petition and submitted evidence, the trial court, on its own motion, reappointed Moore's conservator. In contrast to his previous conservatorship term, Moore was permitted to possess a driver's license and to enter into contracts. He was still, however, prohibited from refusing treatment intended to prevent or ameliorate his disability.

### THE EX PARTE PROCEDURES EMPLOYED TO REESTABLISH MOORE'S CONSERVATORSHIP COMPORT WITH THE CONSTITUTIONAL DICTATES OF PROCEDURAL DUE PROCESS

Moore challenges the reestablishment of his conservatorship on procedural due process grounds; first arguing his notice of the proceedings was constitutionally inadequate and second asserting the reestablishment procedures were constitutionally insufficient. ■ Preliminarily, we note during the pendency of this appeal the public conservator again petitioned to reestablish Moore's conservatorship. After Moore apparently received a citation for conservatorship, a notice of the filing of the petition to reestablish the conservatorship, the petition to reestablish the conservatorship, and a notice

of the conservatorship hearing and was subsequently given a formal hearing, the public conservator was reappointed and the conservatorship was extended for another term. Since Moore does not also challenge the constitutionality of the latest proceedings and since we find no facial invalidity in the reappointment, the present appeal is arguably moot. (*Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725].) Yet, under the present law, conservatorships are still likely to be reestablished ex parte and, as evidenced by the amicus curiae briefs filed herein, such procedures are of great public interest. Moreover, the reestablishment issue could perpetually evade appellate scrutiny where, as here, an ex parte reestablishment was followed by a formal hearing during the pendency of the appeal. For these reasons, we do not find Moore's appeal moot (*Diamond* v. *Bland* (1970) 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733]; *Money* v. *Krall* (1982) 128 Cal.App.3d 378, 392 [180 Cal.Rptr. 376]) and proceed to review his constitutional challenges.

Moore first contends the service of notice here did not ensure he would be actually informed of the pending reestablishment and did not fully or adequately inform him of the legal disabilities attending a reestablishment conservatorship. We find both contentions meritless. ■ If, as is often said, the opportunity to be heard is the fundamental requisite of constitutional due process (see, e.g., *Grannis* v. *Ordean* (1914) 234 U.S. 385, 394 [58 L.Ed. 1363, 1368-1369, 34 S.Ct. 779, 783]), this right can only be given meaning and vitality by the parallel requirement that a person be adequately informed of the imminent governmental action. The frequently cited standard for the adequacy of notice is found in the United States Supreme Court's decision in *Mullane* v. *Central Hanover Bank Tr. Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652]: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for the interested to make their appearance . . . . [¶] . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, . . ." (*Id.*, at pp. 314-315 [94 L.Ed. at pp. 873-874]; accord *Hayssen* v. *Board of Zoning Adjustments* (1985) 171 Cal.App.3d 400, 404 [217 Cal.Rptr. 464].) Thus, due process does not require *actual notice,* but only a method reasonably certain of accomplishing that end. (*Mullane* v. *Central Hanover Bank Tr. Co., supra,* 339 U.S. at p. 319 [94 L.Ed. at p. 876];

*Banas* v. *Transamerica Title Ins. Co.* (1982) 133 Cal.App.3d 845, 851 [184 Cal.Rptr. 262].)

██  Section 5362 provides the conservatee as well as his attorney and the professional in charge of the facility in which the conservatee resides shall be notified, in person or by first class mail, of the impending expiration of the conservatorship at least 60 days before that date. The statutory notice of termination also informs the recipients they will be notified if the conservator decides to proceed with reappointment and that they may request a court hearing or jury trial to contest the continuing need for a conservatorship. Section 5350 provides, with some exceptions, procedures for establishing, administering and terminating conservatorships should comport with division 4 of the Probate Code. Probate Code section 1824 further provides a citation and a copy of the conservatorship petition shall be served on the proposed conservatee at least 15 days before a scheduled hearing. Service, under this section, ". . . shall be made in the manner provided in Section 415.10 [personal delivery] or 415.30 [service by mail with two copies of the notice and acknowledgment] or in such manner as may be authorized by the court. . . ." To effect these statutory procedures in the reappointment context, the San Diego County Superior Court adopted local rules 5.89 and 5.90. Rule 5.89 requires a copy of the reappointment petition be "transmitted" to the facility where the conservatee resides at least 30 days before the conservatorship expires. Rule 5.90 provides: "Notice of the petition to reappoint the conservator shall be served by the conservator on the conservatee, the conservatee's attorney and counselor in mental health, at least 15 days prior to the date of the hearing thereon. Said notice shall be served personally or by first class mail, postage prepaid." Since Moore challenges the adequacy of the notice he received and since there was no reestablishment hearing, we need review the statutory scheme no further. However, we note that under the San Diego County Superior Court rules and the Welfare and Institutions and Probate Codes, a conservatee proceeding to hearing would receive notice 15 days before the hearing (rule 5.94) and would be required to attend except in three limited circumstances, the foremost being medical disability. (§ 5350; Prob. Code, § 1825.)

It requires little review to see these procedures have been designed to ensure that a proposed conservatee would be reasonably likely to be actually informed of a pending reestablishment proceeding. Moore nevertheless argues actual notice is not guaranteed under this scheme. However, as previously discussed, due process of law does not require such a guarantee. Here, the plan for alternative service by personal delivery or by mail, the requirement notice be provided at a number of different procedural steps, and the service of notice at each of these steps on others intimately involved

with both the conservatee and the conservatorship process are calculated to inform Moore and to preserve his opportunity to be heard. Indeed, Moore presents no evidence, and we find none, he was not actually informed of the proposed reestablishment here. In sum, we do not find the service of notice was, in any way, constitutionally infirm.

■ Moore next faults the content of the required notices. Specifically, he asserts the notices did not sufficiently outline the rights attaching to a conservatorship proceeding and thereby impaired his due process and statutory right to oppose the conservator's reappointment. Again, this contention is without substance. "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" (*Memphis Light, Gas & Water Div.* v. *Craft* (1978) 436 U.S. 1, 14, fn. omitted [56 L.Ed.2d 30, 42, 98 S.Ct. 1554].) Thus, for example, in *Memphis Light, Gas & Water* a notice of impending service termination was found constitutionally unsound because it did not advise utilities customers of the availability of a procedure to protest the proposed termination. (*Id.*, at p. 15 [56 L.Ed.2d at pp. 42-43].) In contrast here, not only Moore but also his counsel and the director of the facility in which he resided received multiple notices Moore was still considered gravely disabled, his conservator could, and eventually did, seek reappointment, and the proposed conservatorship could be contested by court hearing or jury trial.

■ Moore counters the substance of the notices still falls short of the statutorily required contents of a citation for conservatorship. Under Probate Code section 1823, the clerk of the court is directed to issue a citation to a proposed conservatee setting forth the time and place of hearing as well as the legal standards by which the need for conservatorship is to be adjudged and rights, such as voting and contracting, which the conservatorship may curtail. Here, however, a formal hearing was not scheduled, and, as revealed in the medical recommendations and petition, the only restrictions sought on reestablishment were prohibitions on Moore's choosing a residence and refusing to consent to medical treatment specifically related to his grave disability. Of these potential legal disabilities, Moore was fully informed by the reestablishment petition and accompanying documents. Thus, the information needed by Moore to prepare for and adequately oppose the impending conservatorship was given to him. That he did not specifically receive a citation of conservatorship under these circumstances is of no consequence to his constitutional right to due process. Parenthetically, we note the petition in this case appears to be a standard form and consequently may not, as it does here, parallel the necessary contents of the conservatorship citation in all cases. To avoid potential due process problems and assure a proposed conservatee is adequately informed, information in the

conservatorship citation bearing on the rights of and consequences to a proposed conservatee should be incorporated in the petition to reestablish a conservatorship or related documents *even when* the petition will be processed without a formal hearing or jury trial. (See Prob. Code, § 1828.)

The department of social services argues we need not undertake any of the above analysis since the adequacy of notice is a jurisdictional question and Moore, appearing generally through the affidavit of his attorney, in effect consented to personal jurisdiction and cannot now launch a due process challenge. (*Brown* v. *Douglas Aircraft Co.* (1958) 166 Cal.App.2d 232, 236 [333 P.2d 59].) Moore counters Abbott, under several theories, did not have the authority to waive his hearing right and therefore the affidavit cannot constitute an appearance. However, we need not unravel this argument nor determine whether a reestablishment proceeding is grounded on new or continuing jurisdiction over the conservatee, for the notice here is constitutionally adequate in all events. Thus, Moore's constitutional challenge to the adequacy of the reestablishment notice must fail.[2]

Moore next avers a conservatorship cannot constitutionally be reestablished with any less process than a hearing; the ex parte proceeding here thus being procedurally flawed. We cannot discern whether Moore grounds his challenge on state or federal constitutional standards and consequently review the procedures *as applied here* under both to ascertain their constitutional validity.

■ Procedural due process is a watchword, not the unwavering equivalent of a formal hearing. The question of whether due process has obtained can only be answered by scrutinizing the circumstances in which the deprivatory action arose. (*Greenholtz* v. *Nebraska Penal Inmates* (1979) 442 U.S. 1, 12-13 [60 L.Ed.2d 668, 678-679, 99 S.Ct. 2100]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 32-34, 96 S.Ct. 893]; *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; *People* v. *Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622].) "Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. [Citation.]" (*Greenholtz* v. *Nebraska Penal Inmates, supra,* at p. 13 [60 L.Ed.2d at p. 679].) Under the Fourteenth Amendment of the federal Constitution, the Supreme Court tests the fundamental fairness of government decisionmaking against a balance of three distinct factors:

---

[2]As we point out *infra,* whether Moore actually waived or authorized counsel to waive his hearing right are issues of fact which we do not reach on this record.

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Mathews* v. *Eldridge, supra,* at p. 335 [47 L.Ed.2d at pp. 33-34].) ■ The California Supreme Court determined the due process provisions of the California Constitution, that is, article I, sections 7, subdivision (a) and 15, specifically value a person's dignity and concomitant interest in being heard. So understood, ". . . the dictates of due process generally [require] consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269; accord *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 565 [216 Cal.Rptr. 367, 702 P.2d 525]; *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89, 106-107 [181 Cal.Rptr. 599]; see generally Note, *People v. Ramirez: A New Liberty Interest Expands Due Process Protections* (1981) 69 Cal.L.Rev. 1073.) We now turn to the application of these standards in the present case.

■ While the reestablishment of Moore's conservatorship unquestionably intruded upon his liberty interests (see *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 223-228 [152 Cal.Rptr. 425, 590 P.2d 1]), the reestablishment procedures employed numerous checks against the risk of erroneous intrusion. Under section 5362, Moore, his appointed counsel, and the director of the facility in which he was residing were all notified his pending conservatorship would soon expire and that the conservator would notify them if he sought reappointment. Each were also notified any could move to oppose the reappointment through court hearing or jury trial. They were also informed that subject to request for such a hearing or trial, ". . . the judge may, on his or her own motion, accept or reject the conservator's petition." (§ 5362.) The petition in turn informed Moore of the consequences of reappointment and again emphasized his right to oppose the proceedings through formal hearing or jury trial. San Diego Superior Court rule 5.91[3] extended the statutory safeguards by requiring Abbott to contact

---

[3]Superior court rule 5.91 provides: "If the conservatee's attorney determines that the

Moore, ascertain Moore's desired response to the hearing question and directly communicate that response to the court through sworn affidavit. Had Moore disagreed with the reappointment, local rule 5.92[4] would have similarly required appointed counsel to inform the court of the proposed conservatee's opposition and to request a hearing.

Here, then, the conservatorship statutes and local rules worked to directly inform the trial court Moore did not oppose the reestablishment of the conservatorship of his person and would not seek a hearing to contest it. The court, in turn, acted on its own motion. However, even assuming the court would have acted erroneously, Moore's loss of liberty would have arguably been de minimis. Under the conservatorship scheme, an ex parte reestablishment can *be directly and immediately* challenged under section 5362 and similarly challenged thereafter under section 5364 or anytime by writ of habeas corpus. (*Henreid* v. *Superior Court* (1976) 59 Cal.App.3d 552, 558 [130 Cal.Rptr. 892]; see, e.g., *Conservatorship of Murphy* (1982) 134 Cal.App.3d 15 [184 Cal.Rptr. 363], where the court granted a reestablishment petition ex parte and the proposed conservatee thereafter contested the petition and was granted a hearing.) In sum, the ex parte reestablishment procedures available here provided constitutionally sound safeguards against error. Further, these procedures welcomed and encouraged Moore's participation in the conservatorship decision. His worth and dignity were not overlooked and indeed, the local rules ensured, through appointed counsel, direct communications with the court. It also allowed Moore to avoid a potentially uncomfortable and disruptive court appearance which, in light of his nonopposition to reestablishment, would have likely been brief and pro forma. (See Morris, *Conservatorship for the "Gravely Disabled": California's Nondeclaration of Nonindependence* (1978) 15 San Diego L.Rev. 201, 232-234.) Finally, the state's interest in employing conservatorships as a means "to provide individualized treatment, supervision, and placement" (§ 5350.1) is also furthered by the ex parte reestablishment procedure. Not only were the costs of an otherwise unnecessary

---

conservatee is not opposed to the reappointment of the conservator, and that there is no beneficial reason to attend or schedule a court hearing, then the attorney shall file a declaration consenting to the reappointment of conservator, stating the reasons for same and waiving hearing.

"The declaration, which may be made by way of the court form or by individualized statement, must be signed under penalty of perjury, and must be filed with the mental health clerk within 15 days of the date of mailing of the notice of petition for reappointment as evidenced by the proof of service by mail filed and served therewith."

[4]San Diego Superior Court rule 5.92 provides: "If the conservatee disagrees with the reappointment of the conservator or the conditions and disabilities imposed, the attorney shall request a hearing date thereon (if not already scheduled by the conservator) by filing a request for hearing with the mental health clerk within 15 days of the date of mailing of the notice of the petition for reappointment as evidenced by the proof of service by mail filed and served therewith."

court appearance avoided, the human and economic resources necessary to prepare, transport and supervise Moore during a hearing were also conserved. In treatment and board and care facilities where both staffing and budgets are tight, this is by no means insignificant. In this context, a footnote from *Parham* v. *J.R.* (1979) 442 U.S. 584 [61 L.Ed.2d 101, 99 S.Ct. 2493], is particularly apt: "'It should be realized that procedural requirements entail the expenditure of limited resources, that at some point the benefit to individuals from an additional safeguard is substantially outweighed by the cost of providing such protection, and that the expense of protecting those likely to be found undeserving will probably come out of the pockets of the deserving.' [Citations.]" (*Id.,* at pp. 605-606, fn. 14 [61 L.Ed.2d at pp. 120-121], citing Friendly, *Some Kind of Hearing* (1975) 123 U. Pa.L.Rev. 1267, 1276.) On reviewing all these interests, we find the balance struck in reestablishing a conservatorship ex parte when the conservatee chooses not to contest the proceeding offends neither the state nor federal constitutional requirements for due process. This holding clearly comports with the United States Supreme Court's ruling in *Codd* v. *Velger* (1977) 429 U.S. 624, 627-628 [51 L.Ed.2d 92, 96-97, 97 S.Ct. 882], where the court determined a hearing, otherwise mandated by the due process clause, was not necessary when the injured party did not contest the facts underlying the challenged deprivatory action. (See *Pearson* v. *Dodd* (1977) 429 U.S. 396 [50 L.Ed.2d 574, 97 S.Ct. 581].)

■ Moore propounds several ancillary arguments to dissuade us from our conclusion. He first argues section 5365, which provides "[a] hearing shall be held on all petitions under this chapter within 30 days of the date of the petition," manifests a legislative intent that hearings must be held in all reestablishment proceedings. However, it is a fundamental principle of statutory construction that in interpreting an interrelated statutory scheme, a specific provision controls a more general one. (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33].) Here, section 5362 more specifically deals with reestablishment and thus in allowing the court to accept or reject a conservator's petition ex parte is not inconsistent with the broader mandate of section 5365. Moreover, we find a parallel in the legislative scheme for reestablishment of probate conservatorships. There, under certain circumstances, a proposed conservatee can avoid a court appearance by expressing his desire not to contest the reestablishment to a court investigator. (Prob. Code, §§ 1825, subd. (a)(3), 1850, 1851.) This parallel suggests the Legislature, in contrast to Moore's assertion, was generally mindful of structuring conservatorship proceedings to minimize, when appropriate and warranted, actual court appearances.

Second, Moore argues language, "the trial judge may, on his or her own motion, accept or reject the conservator's petition," in section 5362, sub-

division (b), can only be construed under the Constitution to mean the trial court can permit or preclude the actual petitions to be lodged in the court. As previously stated, a construction of this section, as applied here, which empowers the trial court to grant or deny petitions is not violative of either the federal or state Constitution. Moreover, we find no reason in logic or legislative history to accept Moore's interpretation. ▮▮▮ Third, Moore asserts *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277 [139 Cal.Rptr. 357], requires the voir dire of proposed conservatees before *any* conservatorship can be established. We do not read *Chambers* to so provide. The language to which Moore points is the *Chambers'* court's construction of then Probate Code section 1754.1, now Probate Code section 1828: "Subsequently [the Legislature] decided to further expand the procedural safeguards of proposed conservatees and require an on-the-record voir dire by the court. . . ." (*Id.,* at p. 286, fn. omitted.) However, as the quote reveals, this protection was legislatively created. Moore presents no case, and we find none, which holds this protection is also constitutionally required. Since we have already found the due process safeguards here were constitutionally adequate, we find no reason to include the requested voir dire as a further precaution. Further, the statutory mandates of the Probate Code apply to mental health conservatorships only when the Welfare and Institutions Code does not otherwise provide. (§ 5350, subd. (f).) Here, the Welfare and Institutions Code does provide for an ex parte reestablishment proceeding (§ 5362, subd. (b)), and therefore controls. Thus, we find neither constitutional nor statutory grounds for an on-the-record voir dire as a sine qua non to the reestablishment of a conservatorship.

▮▮▮ Finally, Moore contends conservatees being gravely disabled, that is being in "[a] condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter" (§ 5008, subd. (h)(1)), cannot be said to be able to knowingly and intelligently "waive" a reestablishment hearing. The amici curiae[5] amplify this point and argue nothing less than an express written waiver should be considered sufficient and that, in any event, appointed counsel cannot waive the substantial rights of proposed conservatees. (See *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 404 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].) However, conservatees are not, by reason of their conservatorship, automatically considered incompetent, and their ability to knowingly and intelligently waive their hearing rights is a question of fact, a question here, which has not been addressed in any proceedings below.

---

[5]Amicus curiae American Civil Liberties Union Foundation of Southern California asks that we take judicial notice of the content of 30 similar ex parte reestablishment petitions. However, we refrain from doing so (Evid. Code, §§ 459, 452) and similarly do not address arguments related to the petition. We do, however, take notice the ex parte procedure has been used to reestablish at least 30 other conservatorships.

However, by fair inference, Moore appears to have knowingly and intelligently waived the reestablishment hearing. Indeed, Moore was represented by appointed counsel, who communicated to the court on a sworn affidavit, and was *less restricted* by the proposed conservatorship than the one he was then suffering. As stated in *Conservatorship of Chambers, supra,* 71 Cal.App.3d at page 287: "When counsel is present, a voluntary and intelligent waiver of known rights may properly be inferred from the record, without a specific on-the-record showing as to each right. . . ."

While we will affirm the reestablishment order, we do not decide the fact questions lurking in the waiver and authorization issues. Moore is free to pursue extraordinary relief, if warranted, to decide these questions and to right wrongs he may have suffered. We further recognize such a course may not be particularly fruitful in light of Moore's most current and uncontested order to conservatorship.

### DISPOSITION

Affirmed without prejudice to Moore's right to seek extraordinary relief.

Butler, J., and Lewis, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 30, 1986.