[No. D049033. Fourth Dist., Div. One. Mar. 21, 2007.]

Conservatorship of the Person of TIAN L.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Petitioner and Respondent, v.
TIAN L., Objector and Appellant.

COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Objector and Appellant.

John J. Sansone, County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Petitioner and Respondent.

OPINION

McCONNELL, P. J.—Tian L. (Tian) appeals a judgment reestablishing a conservatorship of the person for her under the Lanterman-Petris-Short Act (LPS Act). (Welf. & Inst. Code,[1] § 5000 et seq.) Tian contends the court violated her procedural due process rights by accepting the sworn statement of her attorney that she willingly and knowingly consented to the reestablishment without a hearing on the matter. She asserts that under this court's opinion in *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604 [43 Cal.Rptr.3d 427] (*Christopher A.*), the sworn statement was inadequate because it did not recite the proposed placement and disabilities, expressly state she agreed to those items, or include her signature. We conclude Tian's due process rights were adequately protected and affirm the judgment.

### BACKGROUND

In April 2006, the Public Conservator of the County of San Diego filed a petition for the reestablishment of a conservatorship of the person for Tian under the LPS Act on the ground she remained gravely disabled by a mental disorder and was unable to provide for her basic needs of food, clothing and shelter. The petition sought Tian's continued placement in a locked facility and the imposition of certain disabilities, including loss of the rights to drive, enter into contracts, possess a firearm, and refuse or consent to medical treatment and medications. Attached to the petition was a declaration by two physicians that stated Tian suffered from schizophrenia and could not provide basic care for herself, and imposition of the disabilities was necessary because of her psychosis and poor judgment.

The petition notified Tian of her rights to oppose the proceeding and have a jury trial. The petition also stated that before reestablishing the conservatorship the court would determine Tian's opinion on the matter.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

On May 16, 2006, Tian's appointed attorney, Susan Daley, filed a sworn statement required by the Superior Court of San Diego County, Local Rules (hereafter local rules). The statement consisted of a form with numerous paragraphs that could be checked off. Daley checked boxes to show that she had personally visited Tian the previous day, after a discussion of the matter Tian knowingly and willingly consented to reestablishment of the conservancy by stipulation and without a formal court hearing, and Daley had read the petition and medical declaration and stipulated to the reestablishment of the conservatorship, with the requested placement and disabilities, without a formal hearing.[2]

At a May 25, 2006 hearing the trial court found that based on Daley's sworn statement, Tian waived an appearance and stipulated to the physicians' report and qualifications. The court found Tian remained gravely disabled and ordered the reestablishment of a conservatorship of her person for one year. The court also ordered that she be placed in a locked facility, and that she have the right to complete an affidavit of voter registration, but not have the rights to drive, enter into contracts, possess a firearm, or refuse or consent to medical treatment.

## DISCUSSION

### I

Tian contends the judgment must be reversed because the court violated her procedural due process rights by accepting Daley's sworn statement that Tian had no objection to the reestablishment of the conservatorship on an ex parte basis. Tian submits that to satisfy due process requirements, the stipulation form for the reestablishment of a conservatorship must recite the proposed placement and disabilities, indicate counsel discussed these matters with the conservatee along with the conservatee's right to a jury trial, and require the conservatee's signature in addition to counsel's signature.

---

[2] The stipulation form also contained boxes indicating the attorney "discussed my client's condition with: [] the doctor; [] the conservator social worker; [] the staff at the facility, who recommend reestablishment"; "The conservatee's present condition is such that he/she is incapable of understanding, consenting or objection to the reestablishment"; "The prognosis for the conservatee recovering to the extent of no longer being gravely disabled is: [] impossible; [] possible, but not probable"; and "It is my opinion, along with the consensus of others, that the conservatee is still gravely disabled and that the Conservatorship should be reestablished. I can see no purpose in a formal hearing and believe that the matter can best be handled by way of stipulation." Daley did not check any of those boxes.

■ "The question of whether due process has obtained can only be answered by scrutinizing the circumstances in which the deprivatory action arose. [Citations.] 'Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. [Citation.]' " (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728 [229 Cal.Rptr. 875] (*Moore*).)

■ "Under the Fourteenth Amendment of the United States Constitution, the propriety of the actions of government are determined based on the consideration of: (1) the private interests involved, (2) the risk of erroneous deprivation under the current procedures, (3) the probable value of additional safeguards, and (4) the government interests involved. [Citation.] The California Constitution focuses broadly on the 'individual's due process liberty interest to be free from arbitrary adjudicative procedures.' [Citation.] This requires ' "consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" ' " (*Christopher A., supra*, 139 Cal.App.4th at pp. 610–611.)

The issue of whether the court violated Tian's procedural due process rights is a question of law we review independently. (*Christopher A., supra*, 139 Cal.App.4th at p. 610.)

## II

■ "The private interests involved in a conservatorship proceeding are the potential loss of liberty and stigma resulting from the disabilities imposed on a conservatee." (*Christopher A., supra*, 139 Cal.App.4th at p. 611.) " '[C]ivil commitment to a mental hospital, despite its civil label, threatens a person's liberty and dignity on as massive a scale as that traditionally associated with criminal prosecutions.' " (*Ibid.*)

■ ."To limit the stigma and loss of liberty, procedural safeguards were enacted 'to protect an individual against erroneous commitment.' "

(*Christopher A., supra,* 139 Cal.App.4th at p. 611.) Additionally, "the reestablishment procedures employ[] numerous checks against the risk of erroneous intrusion." (*Moore, supra,* 185 Cal.App.3d at p. 729.)

■ A conservatorship under the LPS Act automatically terminates after one year, and if the conservator wishes to reestablish the conservancy for another year he or she must petition the superior court for reappointment and "include the opinion of two physicians . . . that the conservatee is still gravely disabled as a result of mental disorder . . . ." (§ 5361.)

■ Under section 5362, subdivision (a), the clerk of the superior court must give at least a 60-day notice of an impending termination of a conservancy to the conservator, the conservatee, the professional in charge of the facility in which the conservatee resides, and the conservatee's attorney. The notice must advise that if the conservator wishes to reestablish the conservancy, he or she must petition the court by a specified date, and "[s]ubject to a request for a court hearing or jury trial, the judge may, on his or her own motion, accept or reject the conservator's petition." (§ 5362, subd. (b).) The notice also advises that if the conservator petitions for reestablishment, he or she must notify the conservatee, the professional in charge of the conservatee's facility and the conservatee's attorney, and any of those persons may request a hearing or jury trial. (§ 5362, subd. (a).)

■ Further, Probate Code section 1824 requires that a citation and copy of the conservatorship petition be served in person or by first class mail on the conservatee at least 15 days before the scheduled hearing. Under Probate Code section 1823, the citation must include the time and place of the hearing and a statement of the legal standards by which the need for a conservatorship is adjudged. (Prob. Code, § 1823, subds. (a), (b).) As to the latter issue, the citation must notify the conservatee that the proceeding may affect his or her rights to vote, contract, manage and control property, maintain a residence and give informed consent for medical treatment. (Prob. Code, § 1823, subd. (b)(2), (3).)

The citation must also notify the conservatee of his or her right to appear at the hearing and oppose the petition, and of the right to a jury trial. (Prob. Code, § 1823, subd. (b)(6), (7).) The conservatee is required to attend the hearing unless, among other reasons, he or she does not object to reestablishment of the conservancy. (Prob. Code, § 1825, subd. (a)(3).) "The function of a hearing is to allow the proposed conservatee to contest the facts through

confrontation and cross-examination of the conservator and recommending physicians and through presenting evidence on her [or his] own behalf." (*Conservatorship of Pollock* (1989) 208 Cal.App.3d 1406, 1413 [257 Cal.Rptr. 14].)

Moreover, the statutory safeguards were extended by former local rules 8.2.33 and 8.2.34[3] and the sworn statement form, which required Daley to personally visit Tian and discuss reestablishment of the conservancy with her, ascertain whether Tian desired a hearing, and directly communicate her wishes to the court. (See *Moore, supra*, 185 Cal.App.3d at pp. 729–730.)

In *Moore,* this court considered the above statutes and substantively identical local rules and held "the ex parte reestablishment procedures available . . . provided constitutionally sound safeguards against error" and "these procedures welcomed and encouraged Moore's participation in the conservatorship decision. His worth and dignity were not overlooked and indeed, the local rules ensured, through appointed counsel, direct communications with the court." (*Moore, supra,* 185 Cal.App.3d at p. 730.) We also noted that "even assuming the court would have acted erroneously, Moore's loss of liberty would have arguably been de minimis. Under the conservatorship scheme, an ex parte reestablishment can *be directly and immediately* challenged under section 5362 and similarly challenged thereafter under section 5364 or anytime by writ of habeas corpus." (*Ibid.*)

We also concluded in *Moore* that "the state's interest in employing conservatorships as a means 'to provide individualized treatment, supervision, and placement' [citation] is also furthered by the ex parte reestablishment procedure. Not only were the costs of an otherwise unnecessary court appearance avoided, the human and economic resources necessary to prepare, transport and supervise Moore during a hearing were also conserved. In treatment and board and care facilities where both staffing and budgets are

---

[3] Former local rule 8.2.33 provided: "If the conservatee is not opposed to the reestablishment of the conservatorship, or elects to not attend the proceedings, or if the conservatee is unable to participate in the advisement and inquiry relevant to the reestablishment of the conservatorship, the attorney for the conservatee shall either orally articulate the pertinent facts to the court or file a 'Stipulation of Attorney to Reestablish LPS Conservatorship.' " Former local rule 8.2.34 provided that if the conservatee disagreed with reestablishment, his or her counsel must request a hearing. Effective July 1, 2006, former local rule 8.2.33 was amended to read, "The conservatee, or the attorney for the conservatee, may stipulate to the re-establishment of the conservatorship," and former local rule 8.2.34 was amended to read, "The hearing on the petition to re-establish the conservatorship will be conducted in accordance with the [local] rules applicable to a hearing on a petition to establish a conservatorship."

tight, this is by no means insignificant." (*Moore, supra,* 185 Cal.App.3d at pp. 730–731.) We held "the balance struck in reestablishing a conservatorship ex parte when the conservatee chooses not to contest the proceeding offends neither the state nor federal constitutional requirements for due process." (*Id.* at p. 731.)

Unlike the conservatee in *Moore,* Tian does not challenge the court's authority to reestablish a conservatorship on an ex parte basis. Rather, she challenges the adequacy of the stipulation form that Daley signed. We agree the form could be improved by including a space to add the proposed placement and disabilities, and adding a box that counsel could check to show those issues were discussed and the conservatee agreed to their imposition without a hearing. We conclude, however, that Tian's procedural due process rights were honored here.

■ Tian concedes she received all of the statutory notices. Accordingly, she received a copy of the petition, which included the physicians' declaration, and notice of the intended placement in a locked facility and the precise nature of the proposed disabilities. She also received at least two written notices of her right to a hearing and a jury trial if she opposed reestablishment of the conservancy. Further, her attorney met with her in person and discussed these matters. Although the form stipulation Daley signed under penalty of perjury did not expressly state she discussed the proposed placement and disabilities or right to a hearing with Tian, she presumably did so. The form states Daley "discussed reestablishment" with Tian, and central to reestablishment are issues of placement and disabilities.[4] Also, Tian's signature was not required on the stipulation, as Daley, as an officer of the court, signed the form under penalty of perjury. Had Daley not accurately reported Tian's wishes to the court, Tian had recourse in superior court, as we discussed in *Moore, supra,* 185 Cal.App.4th at page 730.

### III

Tian relies on this court's opinion in *Christopher A., supra,* 139 Cal.App.4th 604, but it is distinguishable. *Christopher A.* involved a contested proceeding in which a jury determined Christopher was gravely disabled within the meaning of the LPS Act. Outside of the jury's presence, a physician then testified on issues of least restrictive placement, disabilities and proposed powers of the conservator. The physician believed Christopher was incapable of safely operating a car, entering into contracts, making decisions about his medical treatment and possessing a firearm, and the least restrictive placement was a locked facility. Before the trial's conclusion, the San Diego

---

[4] Tian asserts she had the capacity to understand the nature of the reestablishment proceedings.

County Health and Human Services Agency prepared and submitted to the court and Christopher's counsel (Short) a proposed judgment. Short approved the judgment, and the court entered it without obtaining on the record Christopher's consent. (139 Cal.App.4th at p. 609.)

Christopher contended the court violated his due process rights by accepting the stipulated judgment submitted by the attorneys without first consulting him on the consequences of the agreement. We agreed, holding that because "it is solely the province of the court to determine the proper placement of the conservatee, the disabilities to impose, and the duties and powers of the conservator, a court may not accept a stipulated judgment on these issues without first consulting the conservatee and obtaining on the record his express consent." (*Christopher A., supra,* 139 Cal.App.4th at p. 610.)

██ We explained that "[b]y accepting the stipulated judgment, the court allowed Short to waive Christopher's right to a court hearing on the issues of placement, disabilities, and powers of the conservator. The role of an attorney in litigation is to '[protect] the client's rights and [achieve] the client's fundamental goals.' [Citation.] In carrying out this duty, the attorney has the general authority to stipulate to procedural matters that may ' "be necessary or expedient for the advancement of [the] client's interest[s]." ' [Citation.] However, the attorney may not, without the consent of his or her client, enter into an agreement that 'impair[s] the client's substantial rights or the cause of action itself.' " (*Christopher A., supra,* 139 Cal.App.4th at pp. 612–613.) We noted, "[n]othing in the record shows Christopher consented to the terms of the proposed judgment regarding placement, disabilities, and conservator powers." (*Id.* at p. 613.) We concluded "a stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error." (*Ibid.*)

Here, in contrast, Daley signed an affidavit attesting to Tian's agreement to reestablishment of the conservatorship without a hearing. Again, she received a copy of the petition and accompanying medical statement, and was aware of the proposed placement and disabilities. Nothing in the record suggests Tian agreed only to reestablishment of the conservatorship and not to the proposed placement and disabilities. Had she not agreed to those components, it would have been incumbent on Daley to request a hearing. In *Christopher A.,* there was no representation by counsel that Christopher agreed to the placement and disability components. The procedure here, unlike that in *Christopher A.,* provided an adequate safeguard against error.[5]

---

[5] We reject Tian's contention that our opinion in *Christopher A., supra,* 139 Cal.App.4th 604, abrogates "significant portions" of our opinion in *Moore, supra,* 185 Cal.App.3d 718.

## DISPOSITION

The judgment is affirmed.

Benke, J., and Aaron, J., concurred.