[No. D054783. Fourth Dist., Div. One. Jan. 11, 2010.]

Conservatorship of the Person of DEIDRE B.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Petitioner and Respondent, v.
DEIDRE B., Objector and Appellant.

## COUNSEL

Suzanne M. Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

John J. Sansone, County Counsel, and William A. Johnson, Jr., Deputy County Counsel, for Petitioner and Respondent.

OPINION

**HALLER, J.**—Deidre B. appeals from a judgment reestablishing conservatorship of her person. She contends the trial court violated her due process rights by accepting a stipulation filed by her attorney stating she consented to the reestablishment and waived her right to a formal hearing. We reject this contention.

 We also reject Deidre's assertion that we should consider a postjudgment declaration in which Deidre raises new factual allegations challenging her knowing consent to the stipulated reestablishment. Although filed with the trial court after the judgment, this declaration was never presented to the trial court for a ruling. When a conservatee seeks to challenge his or her consent after entry of a stipulated judgment, these new factual allegations should be resolved at the trial court level through a petition for rehearing or a habeas corpus petition. Pursuit of appellate remedies without obtaining a ruling from the trial court merely prolongs the process without providing the conservatee the opportunity to seek timely relief.

We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On October 21, 2008, the San Diego County Public Conservator filed a petition to reestablish a conservatorship of Deidre under the Lanterman-Petris-Short (LPS) Act on the grounds that she remained gravely disabled and was unable to provide for her basic needs of food, clothing, and shelter. (Welf. & Inst. Code, § 5000 et seq.)[1] The public conservator sought to place Deidre in a board and care facility and to impose various disabilities on her.[2] The petition was supported by the declarations of two physicians attesting to Deidre's mental illness (chronic paranoid schizophrenia), her inability to provide for her basic needs, and her need for placement in a board and care facility.

Deidre and the public defender's office were served with the citation, a copy of the petition, and a notice of the hearing date. These documents set forth the basis for the reestablishment, the requested disabilities and placement at a board and care facility, and the conservatee's right to counsel, to appear at the hearing, and to request a jury trial.

---

[1] Subsequent statutory references are to the Welfare and Institutions Code, unless otherwise specified.

[2] The requested disabilities were loss of the rights to drive a vehicle, enter into contracts, refuse or consent to medical treatment and medication related to her mental disorder, and possess a firearm.

On January 28, 2009, Deidre's appointed attorney (Deputy Public Defender Susan McInerney) filed with the court a "Stipulation of Attorney to Reestablish L.P.S. Conservatorship." The stipulation, signed under penalty of perjury by McInerney, stated that on January 26, 2009, she had personally contacted Deidre by telephone and discussed the reestablishment with her, including the proposed placement and disabilities. The stipulation stated Deidre had knowingly and willingly consented to renewal of the conservatorship, consented to the matter being handled by stipulation and without a formal court hearing, and consented to the proposed placement and disabilities without a formal hearing.[3]

The stipulation was supported by a declaration entitled "Advisal to Proposed Conservatee" signed under penalty of perjury by McInerney setting forth the advisements she had given Deidre concerning the proposed reestablishment of the conservatorship. The advisements explained the nature and purpose of the proceedings, the consequences of reestablishment including the loss of certain rights, and the rights of the proposed conservatee to oppose the proceeding, to request a jury trial, and to be represented by counsel.

On February 3, 2009, the reestablishment petition was amended to request that Deidre be placed in a closed, locked facility. To support this, the county investigator submitted a declaration explaining that since November 23, 2008, Deidre had been in a locked facility rather than a board and care facility. Accordingly, the investigator stated that, with the concurrence of McInerney, this was the requested placement. However, on February 24, 2009 (the day of the reestablishment hearing), the petition was amended to again request placement in a board and care facility. In his declaration, the investigator explained that, again with the concurrence of McInerney, Deidre was ready to be discharged back to the board and care level because her condition had improved.

At the February 24, 2009 hearing on the reestablishment petition, Deputy Public Defender Stanley Jones appeared on behalf of Deidre (who was not present). Jones told the court that McInerney "was not convinced, based on discussions with [Deidre], that she was or was not contesting the reestablishment." To resolve this uncertainty, Jones stated that he had spoken to Deidre that morning by telephone, and she indicated she did not want to contest the

---

[3] The stipulation states: "I have discussed reestablishment with my client who knowingly and willingly consents to its renewal, and further consents to the matter being handled by stipulation and without a formal court hearing." "I have also discussed the proposed placement and disabilities with my client who . . . knowingly and willingly consents to their imposition without a formal [court] hearing . . . ."

proceeding or come to court.[4] The trial court accepted the prior stipulation filed by McInerney, found that Deidre's presence had been waived by her counsel, and entered a judgment ordering that the conservatorship be reestablished with the requested disabilities and that placement be in a board and care facility.

Thereafter, on March 11, 2009, Deidre filed a declaration with the trial court stating that she believed she was able to provide for her basic needs. In the declaration, she claimed that McInerney had contacted her one time in a five-minute phone conversation, but did not advise her of her due process rights, including her right to request and appear at a court hearing or jury trial, and did not advise her of the disabilities that would be imposed on her. She stated that her attorney merely informed her that the public conservator would be appointed as her conservator, and that she had not opposed the reestablishment because her attorney "told [her] nothing." Further, she claimed the county investigator told her that if she waived her right to a hearing, he would move her to a board and care facility.

The record does not reflect the circumstances under which the declaration was generated. Apparently, Deidre's trial counsel was unaware of the declaration; the conservator was not served with a copy of the declaration; the declaration was unaccompanied by any pleading requesting review by the trial court; and the trial court never considered or ruled upon the matters raised in the declaration.

On March 12, 2009, Deidre filed a notice of appeal to contest the court's reestablishment judgment.[5]

## DISCUSSION

Deidre contends the trial court violated her due process rights when it accepted the stipulation from her attorney stating that she consented to the reestablishment and waived her right to a formal hearing. Deidre asserts the court should not have accepted the stipulation once Attorney Jones informed the court that Attorney McInerney was not certain Deidre was consenting to reestablishment of the conservatorship.

---

[4] Jones stated, "So [the county investigator] was good enough this morning to accommodate the whole process. And, actually, [Deidre] was not brought in, but we did speak to her by phone; I spoke to her. [¶] She indicated that she did not wish to contest, she did not wish to attend court, and actually was not going to be transported down. She refused to attend."

[5] Deidre's declaration, which was on a typed form with statements to answer "yes" or "no" and blanks to fill in, does not contain the name of any representative or person assisting Deidre. We note the notice of appeal was submitted by a private attorney rather than Deidre's appointed trial counsel. It is possible the declaration was filed with the assistance of this private attorney.

■ As Deidre recognizes, in prior cases we have evaluated procedures for reestablishing a conservatorship by a stipulated order and concluded they comport with due process. (*Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022 [57 Cal.Rptr.3d 382] (*Tian*); *Conservatorship of Moore* (1986) 185 Cal.App.3d 718 [229 Cal.Rptr. 875] (*Moore*).) ■ Under the LPS Act, conservatorships automatically terminate after one year. (§ 5361.) The conservatee and the conservatee's attorney are given at least 60 days' notice of the pending expiration, and 15 days' notice of the hearing date for reestablishment of the conservatorship. (§§ 5362, subd. (a), 5365; Prob. Code, § 1824[6]; Super. Ct. San Diego County, Local Rules, rules 8.2.31, 8.2.32C.[7]) These notices include a statement informing the conservatee of the potential disabilities and the due process rights associated with establishment of a conservatorship, including the right to counsel and the right to request and appear at a court hearing or jury trial to contest reestablishment. (Prob. Code, § 1823; Welf. & Inst. Code, §§ 5362, 5350, subd. (d).)

■ The reestablishment hearing is conducted according to the same rules that govern the initial establishment of a conservatorship. (§§ 5350, subd. (d), 5362, subds. (a), (b); rule 8.2.34; *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 84 [56 Cal.Rptr.2d 765].) The state has the burden to prove beyond a reasonable doubt that the conservatee remains gravely disabled. (*Conservatorship of Amanda B.* (2009) 173 Cal.App.4th 1380, 1385 [93 Cal.Rptr.3d 817]; *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 611 [43 Cal.Rptr.3d 427].) The conservatorship may be reestablished in summary fashion at an initial court hearing, or, upon request within five days of the initial hearing, through a full court or jury trial. (§§ 5350, subd. (d), 5365, 5362, subd. (b); *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 283 [139 Cal.Rptr. 357]; *Conservatorship of Delay* (1988) 199 Cal.App.3d 1031, 1036 & fn. 4 [245 Cal.Rptr. 216] *Conservatorship of Pollock* (1989) 208 Cal.App.3d 1406, 1411 [257 Cal.Rptr. 14]; *Conservatorship of Kevin M., supra,* 49 Cal.App.4th at p. 84.)[8] If a full court hearing or jury trial is not requested, "[t]he conservatee, or the attorney for the conservatee, may stipulate to the re-establishment of the conservatorship." (Rule 8.2.33.)

■ The conservatee must be present at the reestablishment hearing, advised about his or her due process rights and the nature and consequences of a conservatorship, and questioned about his or her opinion concerning the proposed conservatorship. (Prob. Code, §§ 1825, subd. (a), 1828, subds. (a),

---

[6] Section 5350 requires, with some exceptions, that the procedures for LPS conservatorships comport with Probate Code provisions governing conservatorships.

[7] All further rule references are to the San Diego County Superior Court Local Rules.

[8] If the conservatee requests a court or jury trial before the initial hearing, the initial hearing is waived. (§ 5350, subd. (d).)

(b); *Tian, supra,* 149 Cal.App.4th at p. 1029; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1567–1568 [231 Cal.Rptr. 376].) However, the presence and questioning of the conservatee may be waived if the court is informed that the conservatee has expressly communicated that he or she is not willing to attend the hearing, does not wish to contest the reestablishment, and does not object to the proposed conservator, and the court makes an order that the conservatee need not attend the hearing. (Prob. Code, §§ 1825, subd. (a)(3), 1828, subd. (c).) In this circumstance, the local rules provide that the court, "in its discretion, [may] proceed in the absence of the conservatee if counsel for the conservatee: (1) requests the court to waive the conservatee's presence, (2) represents to the court that there has been contact with the conservatee, and (3) states that, in the attorney's opinion, it is not in the best interests of the conservatee-client to be present in court or for the court to convene where the conservatee is then housed." (Rule 8.2.13.) After a conservatorship is imposed, a conservatee has the right to petition the trial court for a rehearing and may also petition for habeas corpus relief. (§ 5364; *Conservatorship of Amanda B., supra,* 173 Cal.App.4th at p. 1385; *Henreid v. Superior Court* (1976) 59 Cal.App.3d 552, 558 [130 Cal.Rptr. 892]; *In re Gandolfo* (1984) 36 Cal.3d 889, 897–898 & fn. 6 [206 Cal.Rptr. 149, 686 P.2d 669].)[9]

In *Moore,* this court rejected the conservatee's contention that a formal hearing was required to reestablish a conservatorship, noting that "the reestablishment procedures employed numerous checks against the risk of erroneous intrusion," including notice of the reestablishment proceeding and advisement concerning the disabilities of conservatorship and the right to contest the reestablishment. (*Moore, supra,* 185 Cal.App.3d at pp. 728–730.) *Moore* concluded there was no due process violation arising from the procedures that permitted a conservatee to waive the right to a full hearing and waive the right to appear and be questioned at the hearing. (*Id.* at pp. 730–733.) *Moore* reasoned that the procedures encouraged the conservatee's participation, ensured that the conservatee's counsel would communicate with the court regarding a waiver by the conservatee, and permitted the conservatee to avoid a potentially uncomfortable and disruptive court appearance when he or she did not oppose reestablishment. (*Ibid.*) *Moore* underscored that a conservatee's due process rights were further protected because if there were posthearing concerns about the conservatee's consent, the conservatee could immediately request a full court or jury trial, and could

---

[9] Section 5364 permits a conservatee to petition for a rehearing once every six months, stating: "At any time, the conservatee may petition the superior court for a rehearing as to his status as a conservatee. However, after the filing of the first petition for rehearing pursuant to this section, no further petition for rehearing shall be submitted for a period of six months."

also thereafter file a rehearing petition under section 5364 or a petition for writ of habeas corpus. (*Moore, supra*, at pp. 730, 732–733.)[10]

Similarly, in *Tian*, we rejected the conservatee's contention that the stipulation signed by the conservatee's counsel was deficient because it did not include the conservatee's signature. (*Tian, supra*, 149 Cal.App.4th at p. 1031.) *Tian* noted that counsel, as an officer of the court, signed the form under penalty of perjury and if counsel did not accurately report the conservatee's wishes, the conservatee had recourse in superior court as discussed in *Moore*. (*Tian, supra*, at p. 1031.)

Here, Deidre explains that she "is not challenging the adequacy of the [stipulation] form or the contents of the stipulation." Further, she is not arguing that "she should have been forced to come to court . . . ." Rather, Deidre contends that under the circumstances of this case the trial court should not have accepted the stipulation once Jones advised the court that McInerney was not convinced that Deidre was consenting to the reestablishment. She argues that when Jones informed the court about the uncertainty concerning her consent, the court did not adequately confirm that she had knowingly consented and thus the stipulation was rendered ineffective. We are not persuaded.

 According to Jones, McInerney had discussions with Deidre that generated doubts about Deidre's consent. The record does not reflect when these discussions occurred between McInerney and Deidre, but we presume they occurred *after* McInerney filed the stipulation on January 28 because otherwise McInerney, as Deidre's presumably competent representative, would not have filed the stipulation. (*Conservatorship of Ivey, supra*, 186 Cal.App.3d at p. 1566 [absent contrary showing, courts assume counsel is competent]; Evid. Code, § 664 [presume official duty regularly performed].) Jones advised the court that because of these doubts, he spoke with Deidre at the time of the February 24 hearing and confirmed that she did not want to contest reestablishment and did not want to attend the hearing. Given that McInerney had already filed a declaration and stipulation stating that she had advised Deidre concerning the conservatorship and Deidre had consented to

---

[10] The rehearing statute (§ 5364) is typically used to challenge the merits of the grave disability finding, and at the rehearing the conservatee does not have the right to a jury trial and bears the burden to prove by a preponderance of the evidence that he or she is no longer gravely disabled. (See *Conservatorship of Amanda B., supra*, 173 Cal.App.4th at p. 1385; *Conservatorship of Kevin M., supra*, 49 Cal.App.4th at pp. 84, 89–90; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 541 [53 Cal.Rptr.3d 856, 150 P.3d 738]; rule 8.2.22A.) However, the language of the rehearing statute (see fn. 9, *ante*) is broad enough to also permit a claim that the conservatee did not give informed consent to reestablishment which, if shown, would permit a full court or jury trial with the burden on the state to show grave disability.

reestablishment without a formal hearing, the court did not abuse its discretion in accepting Jones's representation. This is *not* a case where the court accepted a stipulation in the absence of a sworn statement from the conservatee's counsel setting forth the conservatee's informed consent.[11] Rather, the court had the sworn documents on file, and the oral statements by Jones confirmed that the consents set forth in the stipulation were still accurate.

Deidre also asserts the court should not have accepted the stipulation because neither she nor McInerney were present at the hearing to be questioned. She contends that Jones's statements at the hearing did not clarify whether she wished to contest the hearing even though she did not want to come to court. To the contrary, Jones informed the court that Deidre indicated "she did not wish to contest . . . ." This confirmed the sworn statement from McInerney in the stipulation that Deidre consented to reestablishment and wanted the matter handled by stipulation.

Deidre also asserts that Jones did not clarify whether she knew she could contest the proceeding without coming to court. It is not clear that this approach would have been permissible. (See Prob. Code, § 1825, subd. (a)(3) [conservatee must be present at hearing unless he or she does not wish to contest the conservatorship].) In any event, McInerney's declaration states that she advised Deidre that she had the right to oppose the proceeding. Further, Jones called Deidre to ensure that she was still consenting to reestablishment. These communications show that Deidre was aware that she could tell counsel she wanted to protest reestablishment had this been her intent.

Deidre further asserts the trial court should not have accepted the stipulation based merely on a phone call from McInerney to her. She contends that it would be difficult for an attorney in a phone call to fully explain to an allegedly gravely disabled person the disabilities and rights concerning a conservatorship. Likewise, she asserts Jones should not have relied on a phone call to confirm her consent, but should have met with her personally. The claim that an attorney cannot effectively communicate with a conservatee by means of a telephone conversation is speculative. The telephone is a standard means of communication and is routinely relied upon to transmit information. Deidre has presented no authority supporting her proposition that decisions made as a result of information conveyed in a telephone

---

[11] A case involving a conservatorship judgment based on the unsworn statement from the conservatee's counsel that the conservatee did not contest the conservatorship and waived his presence at the hearing (which was contrary to the county investigator's statement that the conservatee wanted to contest the conservatorship) is currently on review before the California Supreme Court. (*Conservatorship of John L* ▮ (Cal.App.), review granted Dec. 12, 2007, S157151.)

conversation should be evaluated differently, or are any less reliable, than decisions made based on a face-to-face conversation. Absent a showing that Deidre is unable to understand telephone communications, the trial court was not required to reject the stipulation on this basis.

Deidre asserts the circumstances of this case are comparable to those in *Conservatorship of Christopher A., supra,* 139 Cal.App.4th 604, where this court reversed a conservatorship judgment which had been entered based on the stipulated agreement of *only* the conservatee's counsel. In *Christopher A.,* the conservatee was present in court, but there was no showing the conservatee's counsel had communicated with the conservatee to obtain consent to the stipulation. Under these circumstances, we held the court was required to obtain the conservatee's on-the-record consent. (*Id.* at pp. 608–610, 613.)

In contrast, here the court was provided with a sworn stipulation from Deidre's counsel stating she had communicated with Deidre, and Deidre consented to reestablishment of the conservatorship by stipulation and to the proposed placement and disabilities without a formal hearing. Thus, unlike the situation in *Christopher A.,* the record showed express communication to Deidre during which Deidre provided consent to the stipulation. The submission of the sworn stipulation from her counsel, coupled with her right to request posthearing review before the superior court in the event of any miscommunications with her counsel, protected her due process interests. (*Tian, supra,* 149 Cal.App.4th at pp. 1031–1032; *Moore, supra,* 185 Cal.App.3d at p. 730.)

To support her challenge to the court's acceptance of the stipulation, Deidre notes that McInerney failed to check a box on the stipulation form reflecting that the attorney had read the petition for reestablishment and the medical declaration.[12] She asserts that if her attorney did not read the petition and medical declaration "it would have been hard if not impossible to know of and to fully inform [her] of the proposed disabilities." McInerney's mere failure to check this particular box on the stipulation form does not show she was unaware of the proposed disabilities. McInerney checked the box stating that she had "discussed the proposed placement and disabilities with my client . . . ." As Deidre's presumably competent representative, McInerney could not have discussed the proposed placement and disabilities unless she knew what they were. McInerney's statement under penalty of perjury that she had discussed the proposed disabilities shows that she was aware of them and capable of explaining them to Deidre.

---

[12] This portion of the stipulation form states: "I have read the Petition for Reestablishment and the Medical Declaration and I stipulate to the placement and disabilities as set forth therein and to the reestablishment of the Conservatorship."

Deidre additionally asserts that when Jones advised the court about McInerney's doubts about Deidre's consent, the court should have confirmed that she had the capacity to consent. Jones's statement that McInerney was not certain Deidre was consenting did not make any reference to Deidre's lack of ability to consent. The court was entitled to assume that McInerney, as Deidre's competent advocate, would not have submitted the stipulation attesting to Deidre's consent unless she was satisfied Deidre understood what she was saying when she spoke with her on the phone.

In a related argument, Deidre asserts that it was incongruous for the court to find she was incapable of entering into contracts or refusing medical treatment as part of the imposed disabilities (see fn. 2, *ante*), but at the same time to accept the stipulation stating she had knowingly consented to reestablishment. The fact that Deidre may be unable to protect herself in contractual relationships or voluntarily recognize and comply with her need for medical treatment does not necessarily mean she could not understand her attorney's explanation of the conservatorship proceedings and decide whether she wanted to contest them. Thus, the mere fact of her grave disability did not require the trial court to conclude she could not provide informed consent. (See *Moore, supra*, 185 Cal.App.3d at p. 732.)

Finally, Deidre's declaration claiming that she was not fully advised by her attorney and that she was misled by the investigator is not properly before us for consideration. The declaration was filed with the trial court, but apparently the matter was not pursued before the trial court so as to secure its consideration and ruling on the matter. We decline to consider the factual allegations set forth in the declaration for the first time on appeal. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].) As we noted in *Moore* and *Tian*, a conservatee who wishes to challenge a conservatorship order can seek relief from the trial court by means of a section 5364 rehearing petition or a habeas corpus petition. The presentation of Deidre's declaration for resolution in this appellate forum in the first instance was not an expeditious means of protecting her interests. In future cases, if there are factual allegations not presented at the hearing that raise due process concerns, counsel should immediately bring them to the trial court's attention by filing a rehearing or habeas corpus petition and obtain a ruling on that petition. (See *Conservatorship of Ben C., supra*, 40 Cal.4th at p. 543 [in conservatorship proceedings, "continuing trial court attention ensures much more direct and appropriate intervention" than appellate process].)

Given our conclusion that the trial court did not err in accepting the stipulation, we need not address Deidre's assertion that absent the stipulation there was insufficient evidence to support the reestablishment judgment.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Irion, J., concurred.