Filed 4/9/25  P. v. K.L. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>K.L.,<br><br>    Defendant and Appellant.<br><hr>CONSERVATORSHIP OF THE PERSON AND ESTATE OF K.L.<br><hr>TONY VARTAN, as Conservator, etc.,<br><br>    Petitioner and Respondent,<br><br>        v.<br><br>K.L.,<br><br>    Objector and Appellant. | F088388<br><br>(Super. Ct. Nos. 1467648, 1467649)<br><br><br>**OPINION**<br><br><br><br>F088579<br><br>(Super. Ct. No. 3001183) |

## THE COURT[*]

---

[*] Before Levy, Acting P. J., Franson, J. and Snauffer, J.

APPEAL from an order of the Superior Court of Stanislaus County.  David I. Hood, Judge.

Conness Thompson, under appointment by the Court of Appeal, for Defendant, Objector and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Lewis A. Martinez, Deputy Attorney Generals, for Plaintiff and Respondent in F088388.

Thomas E. Boze, County Counsel, and Shaun S. Wahid, Deputy County Counsel, for Petitioner and Respondent in F088579.

-ooOoo-

Defendant K.L. was criminally charged in 2014 with assault to commit rape on a minor, committing a lewd act on a child, and threatening a public official.  He was found incompetent to stand trial and committed to the state hospital for treatment many times during the criminal proceedings.  The trial court found him incompetent to stand trial for the final time in February 2024 and ordered the county counsel's office to evaluate him for a conservatorship under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.) as he was nearing the maximum term of commitment for restoration of competency.  (Pen. Code,[1] § 1370, subd. (c)(1), (3).)

The county conservatorship investigator petitioned for an LPS conservatorship of K.L.'s person and estate and requested that the public guardian be appointed conservator. The petition requested a finding that K.L. was gravely disabled and the imposition of several statutory disabilities.  At the hearing on the date set for trial on the petition, K.L. stated he agreed with his counsel's representation that he is waiving his right to a trial on whether he is gravely disabled and "accepting the conservatorship."  The trial court accepted K.L.'s concession and the next day issued an order granting the petition and

---

[1] All statutory references are to the Penal Code unless otherwise stated.

issued letters of conservatorship. The order and letters imposed the disabilities requested in the petition.

K.L. raises three issues on appeal, one concerning the competency proceedings and two concerning the conservatorship proceedings. First, he contends the trial court erred by declining to address two *Marsden*[2] motions he made during his competency proceedings. We agree the court erred by failing to hear these motions, but we find the errors were not prejudicial.

Second, concerning the conservatorship, he contends that when he waived his right to a trial and "accepted" the conservatorship, he waived his right to a trial only on the issue of whether he was gravely disabled and did not waive his right to a hearing on whether disabilities should be imposed. Thus, he does not challenge the establishment of the conservatorship, just the imposition of disabilities.[3] He requests the disabilities be vacated and the matter remanded for a hearing on whether they should be imposed. This contention has merit, and we accordingly reverse the conservatorship order in part and remand the matter for a hearing on whether disabilities should be imposed. We thus need not address K.L.'s third claim, which is that the disabilities should be vacated because they were not supported by substantial evidence or trial court findings.

## BACKGROUND

**I.      Criminal proceedings**

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Under *Marsden*, a criminal defendant has a right to make a request to have their court-appointed attorney replaced due to inadequate representation. (*Id.* at p. 123.)

[3] The "disabilities" imposed under Welfare and Institutions Code section 5357 were: K.L. shall not (1) possess a driver's license, (2) have the right to enter into contracts, (3) have the right to possess a firearm, (4) have the right to refuse or consent to treatment related to the treatment of his being gravely disabled, or (5) have the right to refuse or consent to routine medical treatment unrelated to the treatment of his being gravely disabled.

On February 27, 2014, a grand jury indicted K.L. in Stanislaus County Superior Court case number 1467648 on charges of assault with intent to commit rape on a person under 18 years (§ 220, subd. (a)(2); count 1) and one count of committing a lewd act on a child 14 or 15 years old (§ 288, subd. (c)(1); count 2). As to count 1, the grand jury also indicted on the allegation that K.L. had suffered three prior serious felony convictions (§ 667, subd. (a)). As to both counts, it further indicted on the allegations that K.L. had suffered three prior strike convictions under the Three Strikes law (§ 667, subd. (d)) and had served three prior prison terms (§ 667.5, subd. (b)). On January 27, 2015, K.L. pleaded not guilty to the charges and denied the enhancement allegations.

K.L. was also indicted on February 27, 2014, in Stanislaus County Superior Court case number 1467649 on the charge of threatening the life of or serious bodily harm to a public official (§ 76, subd. (a)). He was further indicted on the allegation that he had suffered three prior strike convictions and had served three prior prison terms. On January 27, 2015, K.L. pleaded not guilty to the charge and denied the enhancement allegations.

Criminal proceedings were suspended many times under section 1368 between 2014 and 2023. They were suspended for the last time under section 1368 on July 20, 2023. The day before, the trial court found K.L. incompetent to stand trial after a bench trial. But on July 20, 2023, the court reversed itself and found K.L. competent to stand trial. That day, public defender Reed Wagner, who was making his first appearance for K.L, declared a doubt as to K.L.'s competency and criminal proceedings were suspended. The court noted that K.L. was not seeking a finding of incompetence and thus appointed two doctors to evaluate his competency. (See § 1369, subd. (a)(1).)

***August 31, 2023, hearing***

At the beginning of an August 31, 2023, hearing, the court noted the appearances of counsel and said to K.L. that it had heard from his counsel, Wagner, that K.L. wanted to make a *Marsden* motion. K.L. said, "Yes." The court said, "Since proceedings have

4.

been suspended, your *Marsden* motion is in abeyance until I find you competent. [¶] So at this time, I am not going to hear your *Marsden* motion. It is going to be in abeyance until I determine you're competent. Right now, a doubt has been expressed by your attorney. I am in receipt of two documents which we'll talk about in a moment, but that's why at this time I'm not going to hear your *Marsden* motion." K.L. said, "Okay."

The court then said since K.L. is not personally seeking a finding of incompetence, two doctors had to be appointed under section 1369 to evaluate him. The court noted that it had received the reports from both of the appointed doctors, Drs. Philip Trompetter and Robin Schaeffer, and that the doctors had reached differing conclusions. Counsel Wagner and the prosecutor agreed that a trial should be set on the issue of competency. K.L. said he also agreed and requested a jury trial. Wagner then said he disagreed with having a jury trial and requested a court trial. The trial court continued the matter to September 21, 2023, so the parties could submit briefing on the question of whether defense counsel can override a defendant's request for a jury trial on the question of competency. At the continued hearing, the court found that it was defense counsel's choice as to the type of trial.

### *February 27, 2024, hearing*

At a hearing on December 8, 2023, the competency trial was reset to February 27, 2024,[4] and K.L. was re-referred to Dr. Trompetter for further evaluation based on new information Wagner had given to Dr. Trompetter. On February 27, Wagner told the court that since Drs. Trompetter and Dr. Schaeffer's reports were now "in agreement," there was no longer a need for a competency trial and thus he and the prosecutor were prepared to submit on the matching reports. Attorney Rebecka Monez, who had been appointed to represent K.L.'s point of view that he was competent, said Wagner's representation was "accurate," and added, "It would be frivolous for me to attempt to put on evidence today

---

[4] Subsequent references to dates are to dates in 2024 unless otherwise stated.

5.

given the two reports that we have from the doctors in this case, so I will be submitting and asking the Court to relieve me as I was only reappointed merely for the issue of competency."[5]  The prosecutor said she agreed with Wagner and Monez and requested that the court refer K.L. to the county counsel's office for a Murphy conservatorship evaluation.  The court found K.L. incompetent to stand trial based on the reports and referred K.L. to the county counsel's office for a Murphy conservatorship evaluation.

Wagner then told the court K.L. "would like a *Marsden* motion."  Wagner also said it was his understanding that if the court has already found K.L. incompetent to stand trial, then the *Marsden* motion would be "trailed."  The court clarified it had already found K.L. incompetent to stand trial and agreed with Wagner that the *Marsden* motion should not yet be heard.

## II.     Murphy conservatorship proceedings

On March 27, the Stanislaus County conservatorship investigator petitioned for the public guardian to be appointed conservator of K.L.'s person and estate for one year.  The conservatorship matter was docketed as Stanislaus County Superior Court case number 3001183.  The petition asserted a conservatorship was required because K.L. is "gravely disabled" as defined in Welfare and Institutions Code section 5008, subdivision (h)(1)(B).  The petition requested that the conservator have the power to place K.L. in a suitable facility for the protection of the public and his care and treatment.  The petition also requested the following four disabilities authorized by Welfare and Institutions Code section 5357 be imposed on K.L.:

"(a)  The privilege of possessing a license to operate a motor vehicle;

"(b)  The right to enter into a contract;

---

[5] When a defendant disagrees with their counsel that they are incompetent, the trial court may appoint an additional attorney to represent the defendant's personal point of view that they are competent.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 805–806.)

6.

"(c)  The disqualification of the person from possessing a firearm pursuant to subdivision (e) of section 8103; and

"(d)  The right to refuse or consent to treatment related specifically to the remedying or preventing the recurrence of the proposed Conservatee's being gravely disabled."

***June 25 hearing***

The hearing on the petition was held on June 25.  The hearing began:

"THE COURT:  So I understand that there's agreements; is that correct?

"MR. BITO:  Yes, Your Honor.  He will be waiving his right to a trial regarding the finding of grave disability and accepting the conservatorship.

"THE COURT:  Okay.

"[COUNTY COUNSEL]:  Your Honor, I have nothing more to add. We will follow up with the proper orders and letters.  That will be emailed to your clerk today.

"THE COURT:  Okay.

"And, [K.L.], do you agree with this?

"[K.L.]:  Sure.

"THE COURT:  Okay.

"[K.L.]:  Yes, I do.

"THE COURT:  And my understanding is there's going to be an attempt to change the placement; is that right?

"[COUNTY COUNSEL]:  Yes, Your Honor.  We will be looking to ensure that [K.L.] is appropriately placed at a facility that will treat his mental needs as well as care for him physically.  We are looking at the state hospital and also exploring other options."

The court told then told K.L., "[T]he conservatorship lasts until a year from today, and we're going to vacate the trial dates, obviously, for the July trial dates.  We don't need a *Marsden* hearing.  We just were in agreement.  I think this is the best solution for

7.

everyone." K.L. responded, "Yeah, I think so too." The court then asked county counsel if he had "prepared the order and letters," and counsel said those items would be sent to the clerk.

The next day, June 26, the court entered an order granting the conservatorship petition. The order stated that the parties had stipulated, among other things, that K.L. presents a substantial danger of physical harm to others because of a mental disorder. The order also stated that the parties stipulated that a conservatorship of K.L.'s person and estate is to be appointed for the public's protection and the treatment of K.L.'s disorder.

In the order, the court found that K.L. is gravely disabled because of a mental disorder and that no suitable alternatives to conservatorship are available. Accordingly, the court ordered that the public guardian be appointed as conservator of K.L.'s person and estate and that letters of conservatorship be issued accordingly. The conservator was granted the power to detain K.L. "in the intensive treatment facility or to place [him] for treatment in one of the facilities set out in Welfare and Institutions Code Section 5358."

The order also imposed five disabilities on K.L. under Welfare and Institutions Code section 5357: K.L. shall not (1) possess a driver's license, (2) have the right to enter into contracts, (3) have the right to possess a firearm, (4) have the right to refuse or consent to treatment related to the treatment of his being gravely disabled, or (5) have the right to refuse or consent to routine medical treatment unrelated to the treatment of his being gravely disabled. The order also states the conservatorship automatically terminates on June 24, 2025.

Letters of conservatorship were issued on June 26, which tracked the terms of the order, including the imposition of the five disabilities.

**DISCUSSION**

## I.     Notices of appeal and consolidation

On July 19, K.L. filed a handwritten notice of appeal for Stanislaus County Superior Court case numbers 1467648 and 1467649, his two criminal cases.  The notice stated he was appealing from "the Judgement of the Superior Court in the above entitled cause which was entered on or about 2023–2024 concerning being found incompetent to stand trial and non dismissal of criminal cases."  This notice of appeal was filed under appellate court case number F088388, which relates to superior court cases 1467648 and 1467649.

On August 26, K.L. filed another handwritten notice of appeal for case numbers 1467648, 1467649, and 300183 (the conservatorship matter).  The notice said K.L. was appealing "from the judgment of the superior court in the above entitled cause which was entered on 6/25/24."  This notice of appeal was filed under appellate court case number F088579, which relates to superior court case number 300183.

On October 28, K.L., then represented by counsel, applied to have his first notice of appeal construed as an appeal from the trial court's June 25 order establishing the conservatorship.  We granted his application on October 31.

After this court denied K.L.'s motion to consolidate the two appeals, Long filed two opening briefs, one under each appellate case number.  The briefs are largely carbon copies of each other, and each designates the June 25 conservatorship order as the order appealed from.  K.L. presents his three appellate arguments in both briefs.

An order granting letters of conservatorship is an appealable order.  (Prob. Code, § 1301, subd. (a).)  By appealing from the June 25 order, K.L. may challenge any aspect of the competency proceedings and conservatorship proceedings.  This is because we can identify no appealable judgment or order in the record for the two criminal cases— superior court case numbers 1467648 and 1467649—from which K.L. could have earlier appealed.

9.

We also, on our own motion, have ordered the two appeals consolidated.

## I.    Criminal case claim

K.L. claims the trial court erred by failing to address two *Marsden* motions he made during his competency proceedings.  We agree the court erred, but we find K.L. was not prejudiced by the errors.

### A.    Competency to stand trial procedure

"Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent."  (*People v. Rogers* (2006) 39 Cal.4th 826, 846.)  This mandate is codified in section 1367, which provides that a person cannot be tried while "mentally incompetent," which is defined to mean that "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§ 1367, subd. (a).)  Section 1368 instructs the trial court that if "a doubt arises in the mind of the judge as to the mental competence of the defendant" the judge shall so state on the record, and "inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."  (§ 1368, subd. (a).)  If counsel informs the court that he or she believes the defendant is or may be mentally incompetent," or upon its own motion, "the court shall order that the question of the defendant's mental competence is to be determined in a hearing.  (*Id.*, subd. (b).)  When an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.  (*Id.*, subd. (c).)

Section 1369 sets forth the procedures for determining the question of the defendant's mental competency.  The court must appoint at least one licensed psychologist or psychiatrist to examine the defendant.  (§ 1369, subd. (a)(1).)  If defense counsel tells the court that the defendant is not seeking a finding of mental incompetence,

10.

then the court must, at defense counsel's request, appoint two licensed clinicians, one to be named by the defense and the other by the prosecution. (*Ibid.*) The clinician must evaluate the defendant's competency and submit a report addressing their diagnosis, ability to understand proceedings and assist counsel, and whether there is a substantial likelihood of restoration of competency. (*Id.*, subd. (b)(1)(A)–(C).) The clinician must also evaluate whether antipsychotic medication is appropriate for the defendant. (*Id.*, subd. (b)(2)(A).)

If neither party objects to any competency report submitted, the court may decide the defendant's competency based on the submitted reports. (§ 1369, subd. (c)(1).) If there is an objection, the court must hold a hearing where the defendant is presumed competent unless proven incompetent by a preponderance of the evidence. (*Id.*, subd. (c)(2)–(3).) Competency is determined by a jury unless the defendant waives a jury trial and the prosecution consents or as otherwise provided by law. (*Id.*, subd. (c)(4)–(5).) If tried by a jury, the verdict must be unanimous. (*Id.*, subd. (c)(4).)

If the defendant is found incompetent to stand trial, the court must order the defendant delivered by the sheriff to a state hospital or other available treatment facility that "will promote [their] speedy restoration to mental competence." (§ 1370, subd. (a)(1)(C)(i).) "The defendant's commitment term for restoration of competency under Penal Code section 1370 may not exceed two years, or a period of commitment equal to the maximum term of imprisonment for the most serious offense charged, whichever is shorter." (§ 1370 subd. (c)(1).) If the defendant's competence cannot be restored, they must be returned to the committing court no later than 90 days before the expiration of the maximum term of commitment. (*Ibid.*) Upon the defendant's return to the committing court, the court may order a conservatorship investigator to initiate conservatorship proceedings under the LPS Act if it appears that the defendant is gravely disabled. (§ 1370, subd. (c)(3).) Otherwise, the defendant must be released." (*In re Lerke* (2024) 107 Cal.App.5th 685, 698 (*Lerke*).)

11.

### 2. Marsden overlay and analysis

Although section 1368 requires criminal proceedings to be suspended once a mental competency examination has been ordered, the Sixth Amendment right to effective assistance of counsel still mandates a *Marsden* hearing when such a motion is made. (*People v. Solorzano* (2005) 126 Cal.App.4th 1063, 1069.) Holding a *Marsden* hearing during competency proceedings does not reinstate criminal proceedings and is required even when competency is in question. (*Ibid.*) Denying a *Marsden* motion without a hearing is error. (*Marsden, supra,* 2 Cal.3d at p. 126.)

Here, K.L. requested *Marsden* hearings on August 31, 2023, and February 27, 2024, but the trial court declined to hold them, apparently believing such hearings were improper when competency was undetermined or when a defendant had already been found incompetent. This was incorrect, and the court erred in failing to hear K.L.'s requests for a *Marsden* hearing.

However, reversal is not automatic. "*Marsden* does not establish a rule of per se reversible error." (*People v. Washington* (1994) 27 Cal.App.4th 940, 944.) Reversal is not required if the record shows beyond a reasonable doubt that the defendant was not prejudiced by the trial court's failure to hold a *Marsden* hearing. (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1148.)

Although K.L. does not expressly argue that the denial of his *Marsden* motions had no effect on his competency proceedings, that conclusion follows from his briefing. He asserts that the error prejudiced him only in his later conservatorship proceedings, suggesting that a *Marsden* hearing could have led to the appointment of new counsel, which in turn might have affected the outcome of those proceedings. But this argument fails because K.L. was represented by different counsel, Bito, in the conservatorship proceedings. While K.L. suggests that a *Marsden* hearing might have revealed ineffective assistance by his previous counsel, Wagner, he does not argue that the failure to hold such a hearing affected the competency determination. Because K.L. was

12.

represented by new counsel in the conservatorship proceedings, we are convinced beyond a reasonable doubt that the trial court's error in failing to hold a *Marsden* hearing had no impact on the outcome of his conservatorship proceeding.

## II. Conservatorship claims

### A. Background law on Murphy conservatorships

As already mentioned, a commitment for treatment to restore mental competence is limited to two years or the maximum term of imprisonment for the most serious charged offense, whichever is shorter. (§ 1370, subd. (c)(1).) A defendant must be returned to court for further proceedings when he or she has not recovered competence within this period, or when the facility treating the defendant prepares a report indicating "there is no substantial likelihood that the defendant will attain mental competence in the foreseeable future." (*Id.*, § 1370, subd. (b)(1); see *id.*, § 1370, subds. (c)(1)–(2).)

Upon the defendant's return to court based on the expiration of the maximum confinement period or the lack of a substantial likelihood competence will be restored, the court may dismiss the charges and order the defendant released. (§ 1370, subds. (d), (e).) Alternatively, if "it appears to the court that the defendant is gravely disabled, as defined in subparagraph (A) or (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code, the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of [the LPS Act]." (§ 1370, subd. (c)(3).)

"The LPS Act governs the involuntary commitment and treatment of gravely disabled individuals through a conservatorship program. [Citation.] 'Enacted by the Legislature in 1967, the [LPS Act] includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and

13.

providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program.' [Citation.] A person civilly committed under the LPS Act may be subject to an involuntary confinement at a designated treatment facility, but the commitment is not the 'equivalent to criminal punishment in its design or purpose.' " (*Lerke, supra,* 107 Cal.App.5th at p. 697.)

"There are two categories of conservatorships under the LPS Act based on its definition of gravely disabled: (1) [a standard LPS conservatorship] pursuant to Welfare and Institutions Code section 5008, subd. (h)(1)(A); and (2) a 'Murphy conservatorship' pursuant to Welfare and Institutions Code section 5008, subd. (h)(1)(B). [Citation.] A Murphy conservatorship may be established if a person is criminally charged with a felony offense, has been found mentally incompetent to stand trial under Penal Code section 1370, and all of the following conditions exist: (1) the charges include a felony involving death, great bodily harm, or a serious threat to the well-being of another person; (2) there has been a probable cause determination and the charges have not been dismissed; (3) as a result of a mental health disorder, the person is unable to understand the nature and purpose of the proceedings against them and to assist counsel in their defense in a rational manner; and (4) the person represents a substantial danger of physical harm to others by reasons of a mental disease, defect, or disorder. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).)" (*Lerke, supra,* 107 Cal.App.5th at p. 697.) The LPS authorizes a one-year renewable term for either type of conservatorship. (*Id.* at p. 698; Welf. and Inst. Code, § 5361, subd. (a).)

### B.    Issue and analysis

K.L. does not dispute the trial court properly accepted his stipulation to the establishment of his conservatorship. But he argues the part of the court's order specifying the disabilities imposed on him must be reversed. He contends the court should have held a formal court hearing to determine what disabilities to impose or, in the alternative, obtain his express consent before imposing the disabilities. He argues his

14.

constitutional due process rights required one or the other, as discussed in *In re Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612 (*Christopher A.*). We agree and conclude reversal is required on this ground. We thus need not address K.L.'s other claim, which is that substantial evidence did not support the disabilities imposed.

" 'Appellate courts conduct an independent review of questions of law; they decide them without deference to the decision made below.' [Citation.] Determining if the trial court adhered to a constitutional principle is solely a question of law." (*Christopher A., supra,* 139 Cal.App.4th at pp. 609–610.)

K.L. may contest the imposition of the disabilities without challenging the validity of the court's acceptance of his stipulation that he is gravely disabled and that a conservatorship should be established. This is because "[i]f a person is found gravely disabled and a conservatorship is established, the conservatee does not forfeit legal rights or suffer legal disabilities merely by virtue of the disability. ([Welf. & Inst. Code,] § 5005; [citation].) The court must separately determine the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee. ([Welf. & Inst. Code,] §§ 5357, 5358.) The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal. [Citation.] Although the proposed conservatee waives the right to a prompt court hearing after requesting a jury trial ([Welf. & Inst. Code,] § 5350, subd. (d)), this waiver extends only to a hearing on the issue of grave disability. [Welfare and Institutions Code] [s]ection 5365 suggests the purpose of the LPS hearing is to consider 'all petitions.' The petition is filed by the County ([Welf. & Inst. Code,] § 5352) and includes, or is later supplemented by, the investigator's report, which includes recommendations on placement, disabilities, and powers of the conservator ([Welf. & Inst. Code,] §§ 5354, 5356). Therefore, a proposed conservatee has a right to a hearing

15.

or jury trial on the issue of grave disability and a court hearing to determine placement, disabilities, and conservator duties and powers." (*Christopher A., supra,* 139 Cal.App.4th at p. 612, italics and fn. omitted; *id.* at pp. 610–611.)

In *Christopher A.*, cited by K.L., a jury found Christopher was gravely disabled under the LPS. (*Christopher A., supra,* 139 Cal.App.4th at p. 609.) After the verdict, the county and Christopher's attorney submitted a proposed judgment to the court that included orders regarding placement, imposed disabilities, and granted powers to the conservator. (*Id.* at pp. 608, 609.) The court signed the proposed order without obtaining on the record Christopher's consent regarding the consents and consequences of the stipulated judgment his counsel had approved. (*Id.* at p. 609.)

On appeal, Christopher A. argued "his attorney did not have authority to agree to the judgment to the extent it included placement, disabilities, and conservator powers without the court obtaining his on-the-record consent." (*Christopher A., supra,* 139 Cal.App.4th at p. 608.) The appellate court agreed because of "the significant liberty interests at risk by imposing LPS conservatorships[.]" (*Ibid.*) It concluded that "a stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error," even though there was evidence to support the conclusions in the judgment, because "[a] proposed conservatee's at risk of substantial deprivation of his or her liberty interests for at least a period of one year. [Citation.] To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place." (*Id.* at p. 613, italics omitted.) The court concluded, "before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with

16.

the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues." (*Ibid.*)

Two later cases from the same appellate court, neither of which is discussed by the parties, are also instructive. In these cases, the court held that due process requirements also allowed a trial court to find a conservatee had validly waived a hearing on disabilities and powers and consented to those stipulated to by the parties under a broader range of circumstances than those discussed in *Christopher A.*

In *Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022 (*Tian L.*), a county conservator petitioned for the reestablishment of a conservatorship for Tian because she remained gravely disabled due to psychosis and poor judgment caused by schizophrenia. (*Id.* at p. 1026.) The conservator sought Tian's continued placement in a locked facility and the imposition of certain disabilities. (*Ibid.*) Subsequently, Tian's counsel filed a sworn statement with the court stating that she had personally visited Tian the day before, that Tian had knowingly and willingly consented to reestablishment of the conservatorship by stipulation and without a formal court hearing after discussion of the matter, and that she, counsel, had read the petition and medical declaration and stipulated to the reestablishment of the conservatorship with the requested placement and disabilities, without a formal hearing. (*Id.* at p. 1027.) The court found, based on counsel's sworn statement, that Tian waived an appearance and stipulated to the physicians' report and qualifications. (*Ibid.*) The court reestablished the conservatorship, ordered Tian placed in a locked facility, and imposed the disabilities. (*Ibid.*)

On appeal, Tian, relying on *Christopher A.*, argued the court violated her procedural due process rights by accepting her counsel's sworn statement that Tian had no objection to the reestablishment of the conservatorship on an ex parte basis. (*Tian L., supra,* 149 Cal.App.4th at p. 1027.) She contended that, to satisfy due process, the stipulation form had to "recite the proposed placement and disabilities, indicate counsel discussed these matters with the conservatee along with the conservatee's right to a jury

trial, and require the conservatee's signature in addition to counsel's signature." (*Ibid.*)

The appellate court rejected Tian's argument in light of her concession that she received all the necessary statutory notices, a copy of the petition, which included the physician's declaration, and notice of the intended placement in the locked facility and the precise nature of the proposed disabilities. (*Tian L., supra,* 149 Cal.App.4th at p. 1031.) Further, the court wrote, although the stipulation form signed by her counsel "did not expressly state she discussed the proposed placement and disabilities or right to a hearing with Tian, she presumably did so," as "[t]he form states [counsel] 'discussed reestablishment' with Tian, and central to reestablishment are issues of placement and disabilities. Also, Tian's signature was not required on the stipulation, as [counsel], as an officer of the court, signed the form under penalty of perjury. Had [counsel] not accurately reported Tian's wishes to the court, Tian had recourse in superior court[.]" (*Ibid.*, fn. omitted.) It distinguished *Christopher A.* on the ground that " '[n]othing in the record show[ed] Christopher consented to the terms of the proposed judgment regarding placement, disabilities, and conservator powers.' " (*Id.* at p. 1032.)

Similarly, in *Conservatorship of Deidre B.* (2010) 180 Cal.App.4th 1306 (*Deidre B.*), the appellate court held that a conservatee's due process rights are satisfied when their appointed counsel submits a sworn stipulation stating that they have communicated with the conservatee, explained the consequences of the conservatorship reestablishment, and obtained the conservatee's consent to proceed without a formal hearing. (*Id.* at pp. 1309–1310.) The court distinguished *Christopher A.* on the ground that, in that case, there was no record of communication between counsel and the conservatee. By contrast, in *Deidre B.*, the record contained a sworn statement from counsel affirming that such communication had occurred and that Deidre had consented to the conservatorship's reestablishment, including the proposed placement and disabilities. (*Id.* at p. 1316.) The court held that this procedure, along with Deidre's right to seek post-hearing review, satisfied due process requirements. (*Id.* at p. 1316.)

The circumstances in this case are much closer to those discussed in *Christopher A.* than those discussed in *Tian L.* and *Deidre B.* At the hearing on the petition, K.L.'s counsel stated that K.L. "will be waiving his right to a trial regarding the finding of grave disability and accepting the conservatorship." K.L. said he agreed with this and also said he understood there would be "an attempt to change [his] placement." But the disabilities were not mentioned by anyone at the hearing, and nothing in the record shows K.L. agreed to the imposition of disabilities or waived his right to a hearing on the issue. As in *Christopher A.*, " '[n]othing in the record show[ed] [K.L.] consented to the terms of the proposed judgment regarding … disabilities.' " (*Christopher A., supra,* 139 Cal.App.4th at p. 613.) We thus conclude that the disabilities were imposed in violation of K.L.'s due process rights, and we accordingly reverse the portion of the order imposing the disabilities.

In light of this conclusion, we need not address K.L.'s remaining claim that the imposed disabilities were not supported by substantial evidence.

**DISPOSITION**

The conservatorship order is affirmed in part and reversed in part. The part of the order imposing disabilities on K.L. is reversed, and the matter is remanded for further proceedings consistent with this opinion.

19.